HARRIET EDELSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOSEPH EDELSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edelson v. Commissioner
Docket Nos. 14143-82, 14145-82.
United States Tax Court
T.C. Memo 1986-223; 1986 Tax Ct. Memo LEXIS 385; 51 T.C.M. (CCH) 1109; T.C.M. (RIA) 86223; June 3, 1986. *385 J filed Forms 1040 for 1975, 1976 and 1977 which contained no information as to his income, deductions or credits for those years. J claimed on these forms that only dollars of gold and silver are taxable. In 1976, J transferred his one-half interest in two parcels of real estate to H, his wife, for inadequate consideration. Held, income tax deficiencies and additions to tax under section 6653(b), I.R.C., and section 6654, I.R.C., sustained. Held further, H is liable for J's tax liabilities and additions to tax to the extent of $74,550 as a transferee of J's assets. Joseph Edelson and Harriet Edelson, pro se. Michael R. Rizzuto, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in and additions to the Federal income taxes of petitioner Joseph Edelson (Joe) as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1975
$35,665
$17,833
$1,497
1976
62,837
31,419
2,340
1977
73,019
36,510
2,601
In a separate notice of deficiency issued to Joe's wife, Harriet Edelson (Harriet), respondent determined that Harriet was liable for these deficiencies and additions to tax to the extent of $169,800 as a transferee of Joe's assets. *386 On brief, respondent concedes that the amount of Harriet's transferee liability should be reduced to $74,550. The issues for decision in these consolidated cases [2] are: 1) whether respondent's deficiency determinations and additions to tax under section 6653(b) and section 6654 should be sustained as to petitioner Joseph Edelson and, if so, 2) whether petitioner Harriet Edelson is liable for these deficiencies and additions to tax to the extent of $74,550 as a transferee of Joe's assets. FINDINGS OF FACT Petitioners Joseph Edelson and Harriet Edelson, husband and wife, resided in California at the time their respective petitions were filed. During the years in issue, Joe, a self-employed real estate salesman and real estate broker, owned and operated Joe Edelson Realty, a real estate business located at 62 Washington Avenue, Dumont, New Jersey. The real estate business was located *387 in a four-family building which Joe and Harriet jointly purchased in 1973. From 1973 through 1977, Joe realized substantial income from his real estate business in the form of real estate commissions. During this period, Harriet was employed as a secretary. Petitioners filed joint income tax returns for their taxable years 1973 and 1974 on which they reported the real estate commissions and wage income they received during those years. [3] Petitioners filed separate Forms 1040 for taxable years 1975 through 1977. The Forms 1040 filed by Harriet for 1975, 1976 and 1977 constitute valid income tax returns and have not been challenged by respondent. However, the Forms 1040 filed by Joe for the years in issue contained no information as to his income, deductions or credits for those years. On his 1975 Form 1040, dated April 14, 1976, Joe listed wages, dividends and interest income as "less than $10.00." At the bottom *388 of the front page of this form, Joe explained that "[t]his figure is expressed in Constitutional dollars of silver and/or gold. Constitutional dollar is here used with the statutory definition of 412.5 grains of standard silver, or the relative equivalent in pure silver or gold." Joe provided no additional information in the remaining spaces on the Form 1040. In the right margin of the front page of the form, Joe wrote "specific objection is taken to the specific question[s] on the grounds of the 1st, 4th, 5th, 7th, 8th, 9th, 10th, 13th, 14th and 16th Amendments, as to Federal Reserve Notes." In the left margin of the frong page of the form, Joe wrote "[n]ote: I offer to amend or re-file this return heretofore submitted to exactly as you wish them, if you can show me how to do so without waiving my constitutional rights." Joe attached to the Form 1040 a 49-page explanation of his specific objections. By letter dated June 7, 1976, respondent informed petitioner that his 1975 Form 1040 did not constitute a valid Federal income tax return and that he should file another Form 1040 with the appropriate information. Petitioner responded by letter dated June 17, 1976, as follows: I received *389 your enclosed letter and I am shocked. I prepared my returns, answered every question complete and accurately, explained why I answered every question complete and accurately in a 49 page return, and you send back one page -- photo copied -- with omissions, and inform me that my returns are unacceptable. Sir, I worked very hard preparing my returns. I did an awful lot of research - checked your code and thought I did an excellent job. In accordance with your letter my returns are not acceptable, but you fail to say what it is that is unacceptable. Please refer back to my return in its entirety, and I will be happy to consider any reasonable constitutional recommendations. Joe subsequently filed an amended 1975 Form 1040 which contained the same constitutional objections as the original form. Joe also failed to include on this amended form any additional information concerning his income, deductions or credits for 1975. Joe also failed to include any information concerning his income, deductions and credits of 1976 and 1977 on the Forms 1040 he filed for those years. These forms contained the same constitutional objections as appeared on Joe's 1975 Form 1040. On March 22, 1976, *390 prior to the filing of his original 1975 Form 1040, Joe transferred to Harriet by deed his one-half interest in the four-family building he and Harriet jointly owned. On this date, Joe also transferred to Harriet by deed his one-half interest in their personal residence located at 33 Eastbrook Drive, River Edge, New Jersey. Joe received consideration of $200 from Harriet for his one-half interest in these properties, which had a net fair market value of $149,500 on the date of the transfers. [4]
On October 18, 1977, Joe and Harriet jointly purchased certain real property located at 626 Glenwood Avenue, Teaneck, New Jersey, for $40,000 and then resold the property for $50,000. Neither Joe nor Harriet reported any gain from this sale on their separate 1977 Forms 1040. On April 15, 1977, a special agent with the Criminal Investigation Division of the Internal Revenue Service first met with Joe to discuss potential criminal tax violations with respect to his 1975 taxable year. Joe, however, refused *391 to answer any questions concerning 1975 until the special agent responded to a questionnaire prepared by Joe containing numerous personal questions. Because the special agent refused to answer the questionnaire, the interview was terminated. The special agent met with Joe again on April 26, 1977, to discuss potential criminal tax violations. Joe, however, claimed his Fifth Amendment rights and refused to answer any questions regarding his 1975 income tax return. Respondent expanded his investigation to include Joe's 1976 taxable year. As a result of Joe's lack of cooperation, the special agent contacted third party sources for information concerning Joe's income for both 1975 and 1976. The special agent first presented a summons to First National State Bank in Tenafly, New Jersey, requesting information concerning personal and business accounts maintained by Joe with the bank. The bank, after informing Joe of respondent's request, received a mailgram from Joe informing the bank that he would hold the bank liable for damages if it complied with the summons. The bank consequently refused to disclose the requested information in the absence of a court order enforcing the summons. *392 During the course of his investigation, the special agent also inspected the mortgage files of Valley Savings and Loan Association in Closter, New Jersey, which disclosed that Joe Edelson Realty had received commissions of $31,797 and $43,112 on real estate transactions which occurred during 1975 and 1976, respectively. These files also revealed that two attorneys, Felix Angelillis and Allan Horowitz, had closed most of these real estate transactions. The special agent subsequently contacted Felix and Allan and requested that they disclose any closing documents in which Joe was listed as the real estate broker. Both men, however, refused to turn over the requested documents, explaining that Joe had threatened to sue them if they turned over the requested records. The special agent thereafter served subpoenas duces tecum on both individuals to obtain the documents. The special agent also asked Donald Zackim, President of Mercury, Inc., a mortgage brokerage company which conducted substantial business with Joe, to disclose any records the company possessed concerning real estate commissions earned by Joe on real estate transactions which occurred during 1975 and 1976. Although Mr. *393 Zackim initially agreed to the request, he subsequently refused to disclose the records after Joe threatened to sue him if he disclosed the requested information. Respondent eventually expanded the criminal investigation of petitioner's income taxes to include his 1977 taxable year. Petitioner also refused to cooperate in this investigation. On January 22, 1979, the United States District Court for the District of New Jersey found Joe guilty under section 7203 of willful failure to file tax returns for taxable years 1975, 1976 and 1977. This conviction was subsequently affirmed by the Third Circuit in United States v. Edelson,604 F.2d 232 (1979). In a notice of deficiency addressed to Joe dated April 2, 1982, respondent, relying on cancelled commission checks payable to Joe Edelson and Joe Edelson Realty, records of closing escrows and bank deposit records, determined that Joe failed to report the following amounts of commission income he received during the years in issue: Year
Income
1975
$75,441
1976
109,818
1977
115,578
Respondent further determined that Joe failed to report a short term capital gain of $10,000 which he realized on the 1977 sale of certain real property located at 626 *394 Glenwood Avenue, Teaneck, New Jersey. Respondent also determined additions to tax for fraud under section 6653(b) and additions to tax for failure to pay estimated income tax under section 6654. In a separate notice of deficiency addressed to Harriet, respondent determined that she was liable for Joe's income tax deficiencies and additions to tax to the extent of $169,800 as a transferee of his assets. On brief, respondent concedes that the property interests Harriet received from Joe had a value of only $74,750 and, therefore, that her transferee liability does not exceed $74,550, the value of the property interests less the consideration she paid for such interests. On June 21, 1982, both Joe and Harriet filed petitions with this Court in which they contested respondent's determinations. Each petition listed petitioners' address as P.O. Box 29 and Drobish Road, Bangor, California, and LaPorte Star Route, Marysville, California. Also on this date, we granted petitioners' requests that the trial of these cases be held in San Francisco, California. On November 15, 1982, petitioners filed motions requesting that the trial of these cases be moved from San Francisco, California to *395 San Diego, California. Petitioners represented in their motions that they had recently moved to San Diego. We granted Joe's motion on November 17, 1982, and Harriet's motion on November 19, 1982. On August 5, 1983, this Court mailed to Joseph and Harriet notice that their cases were set for trial on October 24, 1983, at San Diego, California. On August 23, 1983, petitioners filed motions for continuance requesting that their cases be removed from the October 24, 1983, San Diego calendar and placed on a later San Diego calendar. Petitioners explained that they were presently living in New Jersey but anticipated that they would return to San Diego sometime in 1984. We granted Joe's motion by order dated August 24, 1983, and stamped Harriet's motion granted on August 25, 1983. On July 24, 1984, this Court served petitioners with notice that their cases were set for trial on October 15, 1984, at San Diego, California. On August 14, 1984, we served petitioners with notice that the San Diego session would begin on October 16, 1984, rather than on October 15, 1984. On August 7, 1984, petitioners filed a motion for continuance requesting that their cases be removed from the October *396 16, 1894, San Diego session. Petitioners explained that they were still living in New Jersey and did not anticipate returning to San Diego until after 1984. We denied this motion on August 14, 1984. On October 1, 1984, petitioners filed a motion requesting that the trial of their cases be moved to Newark, New Jersey, on the ground that "[c]ircumstances have brought Petitioners to New Jersey and Petitioners' attempts to return to California have been unavoidably detained." We granted petitioners' motion by order dated October 10, 1984. On February 28, 1985, we served petitioners with notice that their cases had been set for trial on May 28, 1985, at Newark, New Jersey. On April 18, 1985, petitioners filed a motion in which they requested that the trial of their case be moved from Newark, New Jersey, to San Diego, California. In the motion, petitioners, claiming that San Diego County had been their permanent residence since October, 1982, maintained that "[t]he unnecessary cost and inconvenience for Petitioners to travel across the country to appear in Tax Court would cause Petitioners a great hardship." We denied this motion on May 16, 1985. On May 22, 1985, respondent served a *397 subpoena duces tecum on Harriet commanding her to 1) appear before the United States Tax Court at 10:00 a.m. on May 28, 1985, at Room 300, Military Park Building, 60 Park Place, Newark, New Jersey and 2) bring "deeds, closing statements and related documents indicating an interest that you held in real property from 1974 through 1978." On May 24, 1985, respondent served a subpoena duces tecum on Joe commanding him also to appear at the Court's May 28, 1985, Newark session and to bring with him copies of Forms 1040 that he filed for the taxable years 1974 through 1983. When these cases were called for trial from the trial calendar of this Court in Newark, New Jersey, on May 28, 1985, no appearance was made by or on behalf of petitioners. The trial of this case was held on June 6, 1985. Neither petitioners nor a representative of petitioners appeared at the trial. Respondent appeared and orally moved the Court to consolidate petitioners' cases for trial, briefing and opinion. We granted respondent's motion. Respondent then moved the Court to dismiss Joe's case for lack of prosecution insofar as the income tax deficiencies are concerned and to enter a decision for respondent in the *398 amount of the deficiencies determined in the notice of deficiency mailed to Joe. We granted respondent's motion at trial, and decision will be entered for respondent that there are deficiencies in Joe's income taxes for 1975, 1976 and 1977 and follows: Year
Deficiency
1975
$35,665
1976
62,837
1977
73,019
We then received evidence consisting of oral testimony and exhibits concerning the issues of fraud and transferee liability. OPINION The first issue for decision is whether Joe is liable for additions to tax for fraud under section 6653(b) for 1975, 1976 and 1977.Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner,79 T.C. 888, 930 (1982). The burden of proof rests on respondent to show by clear and convincing evidence that some portion of an understatement of income for each year was due to fraud with the intent to evade tax. Miller v. Commissioner,51 T.C. 915 (1969); section 7454(a); Rule 142(b). Respondent must establish (1) that Joe underpaid his taxes during each year and (2) that some part of his underpayment each year was due to fraud. Hebrank v. Commissioner,81 T.C. 640, 642 (1983). Although respondent *399 may establish fraud with circumstantial evidence, Stephenson v. Commissioner,79 T.C. 995, 1005, 1006 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984), fraud cannot be inferred from a mere understatement of income, Holland v. United States,348 U.S. 121, 137 (1954), or from a deficiency in taxes due to an honest mistake or poor judgment. Iley v. Commissioner,19 T.C. 631, 635 (1952). On the record before us, we find that respondent has satisfied his burden of proving an underpayment of tax for each of the years in issue and that some part of each underpayment was due to fraud. To establish that Joe underpaid his taxes for each of the years in issue, respondent presented cancelled checks payable to Joe Edelson or Joe Edelson Realty totalling $31,023.40, $58,277.00 and $42,258.40 for 1975, 1976 and 1977, respectively. Although the record does not contain all of the records relied on by respondent to reconstruct Joe's taxable income for the years in issue, these cancelled checks, alone, represent a substantial underpayment of tax in each of the years 1975, 1976 and 1977. Joe's written statement on his Forms 1040 that these amounts are not taxable because they do not represent *400 dollars of gold and silver is frivolous. This Court has repeatedly held that the statutory gold content of the dollar is irrelevant for purposes of determining taxable income. White v. Commissioner,72 T.C. 1126, 1129 (1979); Cupp v. Commissioner,65 T.C. 68, 80-81 (1975), affd. in an unpublished opinion 559 F.2d 1207 (3d Cir. 1977); Gajewski v. Commissioner,67 T.C. 181, 194-195 (1976), affd. in an unpublished opinion 578 F.2d 1383 (8th Cir. 1978). Consequently, we find that respondent has established an underpayment of tax in each of the years in issue. We also find that respondent has established by clear and convincing evidence that at least part of Joe's tax underpayment for each of the years in issue was due to fraud and not the result of an inadvertent omission or an honest mistake. During the years in issue, Joe earned substantial amounts of commission income from his real estate business which he failed to report on income tax returns for those years. This Court has held that "consistent understatements of income in substantial amounts over a number of years by knowledgeable taxpayers, standing alone, are persuasive evidence of fraudulent intent to evade taxes." Otsuki v. Commissioner,53 T.C. 96, 108 (1969). *401 Moreover, on this record, we are satisfied that Joe was aware of his obligation to report and to pay taxes on this income. For 1973 and 1974, Joe and his wife, Harriet, jointly filed valid income tax returns on which they reported and paid tax on substantial amounts of commission income. Because the Forms 1040 individually filed by Joe for the years in issue did not contain sufficient data from which respondent could compute and assess Joe's tax liability for the years in issue, such forms did not constitute income tax returns. See Reiff v. Commissioner,77 T.C. 1169 (1981). Although failure to file a return is not conclusive evidence of fraud, it is persuasive evidence of an intent to defraud the government. Stoltzfux v. United States,398 F.2d 1002 (3d Cir. 1968); Habersham-Bey v. Commissioner,78 T.C. 304 (1982). Further, the IRS special agent assigned to investigate potential criminal tax violations regarding Joe's 1975, 1976 and 1977 taxable years testified at trial that Joe had repeatedly refused to answer any questions or provide any documents during the course of his investigation.Joe's failure to cooperate in respondent's investigation of the taxable years in issue is additional *402 evidence of fraud. Gajewski v. Commissioner,supra.
We also find Joe's transfer of his one-half interest in two parcels of real estate valued at $149,500 to his wife for consideration of $200 to be persuasive evidence of fraud. These transfers occurred on March 22, 1976, approximately three weeks before Joe executed his 1975 Form 1040. We also point out that prior to 1975 Joe and Harriet had filed joint income tax returns. During the years in issue, however, Harriet separately filed her income tax returns on which she reported and paid tax on her income for those years. In conclusion, after a careful review of all the facts before us, we find that respondent has satisfied his burden of proof. Petitioner's attempt to divest himself of substantially all of his assets shortly before he filed his incomplete 1975 Form 1040, his failure to file valid income tax returns for the years in issue and his lack of cooperation all support a finding that he fraudulently underpaid his taxes during 1975, 1976 and 1977. Accordingly, respondent's additions to tax for fraud are sustained. The next issue for decision is whether Joe is liable for additions to tax under section 6654. Section 6654 *403 provides for an addition to tax for underpayment of estimated taxes. The record contains no evidence that this addition to tax does not apply. Consequently, respondent's determination is sustained. Rule 142(a). The final issue for decision is whether Harriet is liable for Joe's income tax deficiencies and additions to tax to the extent of $74,550 as a transferee of Joe's one-half interest in two parcels of real estate jointly owned by them. Section 6901(a)(1)(A) authorizes the assessment and collection of transferee liability, at law or in equity, in the same manner as the liability for income taxes. [5] This provision, however, only provides a procedure by which a transferor's taxes may be collected from a transferee. Mayors v. Commissioner,T.C. Memo. 1984-401, revd. and remanded on another issue 785 F.2d 757 (9th Cir. 1986); Segura v. Commissioner,77 T.C. 734, 742 (1981). The substantive question of whether a transferee is liable for the transferor's obligation is determined by state law. Commissioner v. Stern,357 U.S. 39, 45 (1958). Respondent bears the burden of proving that Harriet is a transferee within the meaning of New Jersey state law. [6] Section 6902(a); Rule 142(d). *404 To support his claim against Harriet, respondent relies upon N.J. Stat. Ann. sec. 25:2-13 (West 1970), which provides as follows: Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors. Respondent maintains that the record *405 is replete with evidence that Joe actually intended to defraud the United States government when he transferred to Harriet for inadequate consideration his one-half interest in two parcels of real estate jointly owned by them. Respondent further maintains that the United States was a present as well as future creditor of Joe on March 22, 1976, when the transfers in issue occurred. Respondent therefore concludes that Harriet is a transferee within the meaning of New Jersey state law and, as such, is liable for Joe's income tax deficiencies and additions to tax to the extent the value of the property interests she received from Joe exceeded the consideration she paid Joe for such interests. We agree. Initially, we note that the Federal government was a "present or future creditor" of Joe within the meaning of New Jersey state law at the time the property transfers occurred. N.J.S.A. sec. 25:2-7 defines a creditor as "a person having any claim, whether matured or immatured, liquidated or unliquidated, absolute, fixed or contingent." As of March 22, 1976, the date of the property transfers in issue, the United States had a present or future claim against Joe for his 1975, 1976 and *406 1977 income tax liabilities. The Federal government is therefore a creditor as defined by N.J.S.A. sec. 25:2-7. On the record before us, we are also satisfied that petitioner actually intended to hinder, delay or defraud the Federal government of its lawful taxes when he transferred his one-half interest in the River Edge and Dumont properties valued at $149,500 to Harriet, his wife, for consideration of $200. Our finding is based on the following facts: 1) petitioner transferred his interest in the properties to Harriet only three weeks before he filed a 1975 Form 1040 on which he failed to report any income or income tax liability and Harriet separately filed a 1975 income tax return on which she fully reported her wage income for that year; and 2) although petitioners had filed joint income tax returns prior to 1975, they filed individual income tax returns for 1975, 1976 and 1977. We think that these facts are persuasive evidence that the transfers in issue were part of a plan "to hinder, delay or defraud" the Federal government within the meaning of N.J.S.A. sec. 25:2-13. Consequently, we find that respondent has satisfied his burden of proving that Harriet is a transferee *407 within the meaning of New Jersey state law and, as such, is liable for Joe's income tax deficiencies and additions to tax to the extent of $74,550. To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. At trial, we granted respondent's oral motion to consolidate these cases for trial, briefing and opinion.↩
3. Petitioners' 1973 and 1974 taxable years were the subject of a prior Tax Court case, Edelson v. Commissioner,T.C. Memo. 1979-431↩. In that case, we sustained respondent's determination that petitioners were liable for self-employment income tax under sections 1401 and 1402.
4. At the time of the transfers, the properties had a combined fair market value of $170.000. However, on March 22, 1976, petitioners' personal residence was subject to a mortgage of $20,500.↩
5. Section 6901(a)(1)(A) provides, in pertinent part, as follows: SEC. 6901. TRANSFERRED ASSETS. (a) METHOD OF COLLECTION.--The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) INCOME, ESTATE, AND GIFT TAXES.-- (A) TRANSFEREES.--The liability, at law or in equity, of a transferee of property-- (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes), * * * ↩
6. Both petitioners were residents of New Jersey on March 22, 1976, the date on which the real estate transfers occurred, and therefore subject to the jurisdiction of that state.↩