958 F.2d 380
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Shizuko YAMAMOTO; Hirotoshi Yamamoto, Petitioners,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent.
 No. 91-70069.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 9, 1992.*
Decided March 25, 1992.
 
 Before CHAMBERS, FARRIS and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Hirotoshi Yamamoto[1] appeals pro se the tax court's decision affirming the Commissioner's determination of deficiencies in Yamamoto's tax returns for tax years 1980 and 1981. We have jurisdiction pursuant to 26 U.S.C. § 7482(a), and we affirm.
 
 STANDARD OF REVIEW
 
 3
 Decisions of the tax court are reviewed on the same basis as decisions in civil bench trials in district court. Mayors v. Commissioner, 785 F.2d 757, 759 (9th Cir.1986). The issues in this case concern factual findings and are reviewed under the "clearly erroneous" standard. Id.
 
 DISCUSSION
 1. Investment Interest Limitation
 
 4
 Yamamoto borrowed money and invested it in Manoa Finance Company ("MFC") in exchange for stock in that corporation. The tax court found that the interest Yamamoto paid on these loans was investment interest within the meaning of section 163(d) of the Internal Revenue Code, and as such was subject to limits on deductibility. This finding is not clearly erroneous.
 
 
 5
 Although the investment of money in MFC in exchange for stock was necessary to the survival of MFC's business, MFC was a business separate and apart from Yamamoto's business. Yamamoto was an insurance agent and general contractor. He was not in the industrial loan business as was MFC. Although the tax court described Yamamoto as the "sole owner of the voting stock of MFC" and found that he was "actively involved in business activities integrated with his industrial loan company, MFC," this does not compel the conclusion that the business of MFC was Yamamoto's business. Yamamoto had the burden to show this and he failed to do so. See Yamamoto v. Commissioner, 51 T.C.M. (CCH) 1560, 1564 (1986), aff'd, 891 F.2d 297 (9th Cir.1989) (a taxpayer "cannot adopt the corporation's trade or business as his own to escape the limitations of section 163(d)").
 
 2. Income from Forgiveness of Debt
 
 6
 Yamamoto owed MFC $1,646,794.52, represented by several promissory notes. He also held a note receivable from Manoa Enterprises, Inc. ("MEI"), a corporation in which he also owned all of the outstanding shares. Yamamoto assigned his MEI note to MFC in exchange for a cancellation of his $1,646,794.52 debt to MFC. The tax court upheld the Commissioner's determination that the MEI note was worthless at the time it was transferred to MFC and that as a result Yamamoto realized $1,646,794.52 of income from the discharge of indebtedness.
 
 
 7
 Gross income includes income from the discharge of indebtedness. U.S.C. § 61(a)(12). To the extent that a taxpayer has been released from an obligation to repay a debt, "the taxpayer enjoys a net increase in assets equal to the forgiven portion of the debt." United States v. Centennial Savings Bank FSB, 111 S.Ct. 1512, 1518 (1991); United States v. Kirby Lumber Co., 284 U.S. 1 (1931); see Kaplan v. Commissioner, 21 T.C. 134 (1953) (petitioner realized taxable income of $4,000 where petitioner's wholly owned corporation canceled his indebtedness to the extent of $1,234,000 in return for securities with a fair market value of $1,230,000). Whether a debt has been discharged for tax purposes is dependent on the substance of the transaction. Mere formalisms arranged by the parties are not binding in the application of the tax laws. See Commissioner v. Court Holding Co., 324 U.S. 331 (1945).
 
 
 8
 Yamamoto's expert, Alfred Au, testified that the MEI note was worth its face value at the time it was transferred to MFC on October 15, 1981. The Commissioner's expert, Richard A. Lapides, testified that the MEI note was worthless when it was transferred to MFC. Yamamoto argues the district court erred in crediting Lapides's testimony over Au's. We disagree.
 
 
 9
 Lapides is a certified appraiser who appraises 16 to 18 notes a year. 60 T.C.M. at 1059. He had appraised 150 to 200 notes, ranging in value up to $50 million. He testified that the value of the MEI note had to be discounted from its face value to determine what someone would pay on October 15, 1981 for the right to receive the principal and interest under the note when it became due 5 3/4 years later. Lapides also considered the financial ability of MEI to pay the note. The note was unsecured, and although MEI was the obligor, its "ability to pay was based on MFC's strength," because MEI's only assets at the time of the transfer were $500 and the stock of MFC. 60 T.C.M. at 1060. Based on an analysis of MFC's financial statements, Lapides concluded that " 'the subjet [sic] note could not be sold on the open market ... and therefore the fair market value of the [ ] note is zero (0).' " Id. This opinion was buttressed by reports of Alexander, Grant and Peat, Marwick. Id.
 
 
 10
 The tax court did not abuse its discretion in rejecting the appraisal advanced by Yamamoto's expert, and instead accepting the appraisal of the Commissioner's expert. See Ebben v. Commissioner, 783 F.2d 906, 909 (9th Cir.1986) (trial court has broad discretion to evaluate "the overall cogency of each expert's analysis").
 
 
 11
 Finally, Yamamoto argues that in any event the discharge of his $1,646,794.52 debt to MFC did not take place until 1985 when the bankruptcy trustee cancelled the outstanding stock of MFC. This argument is meritless. Yamamoto stipulated that payment to MFC was made in full satisfaction of his debts on October 15, 1981. 60 T.C.M. at 1060. This was also the date reflected on MFC's accounting entries for the October 15, 1981 transaction, entries which the tax court found the state officials did not disturb.
 
 
 12
 The tax court did not clearly err in its factual finding that the discharge occurred on October 15, 1981. See Kelley v. Commissioner, 62 T.C.M. (CCH) 136 (1991) (discharge occurs when adjustments to corporate books are made and the discharge is complete).[2]
 
 3. Disallowance of Bad Debt Deduction
 
 13
 Yamamoto owned a 50% interest in Makaha Reef, a real estate developer. Yamamoto guaranteed 50% of Makaha Reef's obligations to MFC. MFC foreclosed on Makaha Reef, and after various financial adjustments were made, Yamamoto executed a promissory note dated June 30, 1981 in favor of MFC for $218,490.39. This note represented Yamamoto's 50% share of what he owed to MFC under his guarantee.
 
 
 14
 In October 1981, Yamamoto assigned his note from MEI to MFC. His $218,490.39 note to MFC was treated as "paid" in exchange for this assignment. Yamamoto argues that by giving MFC his $218,490.39 note, and by paying it off by the transfer of the MEI note, he honored his guarantee, paid the debt of another, and is entitled to a bad debt deduction.
 
 
 15
 The tax court rejected this argument and so do we. Yamamoto did not "pay" his guarantee when he gave MFC his $218,490.39 note. See Don E. Williams Co. v. Commissioner, 429 U.S. 569, 577-78 (1977) (payment for tax purposes must be made in cash or its equivalent and a note promising payment of cash in the future is not cash or its equivalent). The MEI note transferred to MFC in satisfaction of the $218,490.39 note did not constitute payment because the MEI note was worthless. See Eckert v. Burnet, 283 U.S. 140, 141 (1931) (property having a cash value must be paid by cash basis taxpayer to grant bad debt deduction).
 
 4. The T-Y Partnership Loss
 A. Accrued Interest Owed to MFC
 
 16
 The tax court held that Yamamoto was not entitled to a $126,250 deduction for his distributive share of the T-Y Partnership's loss arising from accrued interest, because neither Yamamoto nor the partnership, both cash basis taxpayers, ever paid the accrued interest owed to MFC. We agree. The accrued interest incurred by the T-Y Partnership was not paid by the assignment of the MEI note to MFC because the MEI note did not constitute cash or its equivalent. See Don E. Williams, 429 U.S. at 578, 582-83; Devoe v. Commissioner, 52 T.C.M. (CCH) 641 (1986), aff'd, 860 F.2d 1088 (9th Cir.1988), cert. denied, 490 U.S. 1007 (1989) ("Deductions allowed [cash basis taxpayer] for interest expense under section 163(a) must be limited to actual amounts paid.").
 
 B. Nonbusiness Bad Debt
 
 17
 Yamamoto argues the tax court erred in upholding the Commissioner's determination that he was not entitled to a $116,033 deduction for his distributive share of the T-Y Partnership's loss arising from loans made to Makaha Reef. Yamamoto argues that the debt owed by Makaha Reef for these loans was incorrectly characterized as a nonbusiness bad debt. He asserts that because he was actively engaged in running the T-Y Partnership business, its receivable for money lent to Makaha Reef was a business debt of Makaha Reef. We disagree.
 
 
 18
 Whether a debt is a business debt is a question of fact. See Treas.Reg. § 1.166-5(b) (as amended in 1979). Yamamoto failed to produce evidence to show that the partnership's dominant motivation in advancing the funds to Makaha Reef was connected to the trade or business of the T-Y Partnership, 26 U.S.C. § 166(d)(2)(A), or that the loss from the bad debt was incurred in the partnership's trade or business. See 26 U.S.C. §§ 166(d)(2)(B), 702(a)(1) and 702(b) (whether a partnership's bad debt gives rise to a short-term capital loss is determined at partnership level and passed through to taxpayer); Whipple v. Commissioner, 373 U.S. 193, 201 (1963) ("business debt" must be proximately related to the taxpayer's trade or business); United States v. Generes, 405 U.S. 93, 103-05 (1972) (dominant motivation test used to determine if debt is proximately related to trade or business).
 
 
 19
 The tax court's finding that the Makaha Reef debt was not a business debt is not clearly erroneous.
 
 C. Investment Interest Limitation
 
 20
 The tax court upheld the Commissioner's disallowance of a deduction of $18,045 for Yamamoto's distributive share of the T-Y Partnership's loss. The deduction was claimed as an interest expense. It was disallowed pursuant to the limitations of section 163(d) of the Internal Revenue Code, because the Commissioner determined that the interest expense was incurred for investment rather than for business purposes.
 
 
 21
 Yamamoto argues that because he was actively involved with the T-Y Partnership, the interest expense was incurred for business purposes. The determination, however, of whether property is held for business or investment is made at the partnership level. See 26 U.S.C. §§ 702(a)(1), 702(b). The relevant inquiry is whether the T-Y Partnership incurred the debt, which gave rise to the interest, for the purpose of acquiring or carrying property held for business. The tax court found that Yamamoto failed to produce sufficient evidence on this issue to support the claimed $18,045 deduction. This is a finding of fact. See Betson, 802 F.2d at 367. The finding is not clearly erroneous.
 
 5. $3 Million Operating Loss
 
 22
 For the first time on appeal, Yamamoto argues that a net operating loss of $3 million, purportedly suffered in 1985, is sufficient to eliminate the deficiencies determined for tax years 1980 and 1981. Yamamoto never presented this issue to the tax court at trial or in his post-trial briefs.
 
 
 23
 The only mention of the $3 million loss appears in a document titled "PETITIONERS' ALTERNATIVE COMPUTATION IN OPPOSITION TO RESPONDENT'S COMPUTATION FOR ENTRY OF DECISION." This document was filed in the tax court after the trial was over, the decision had been filed, and Yamamoto's motion for reconsideration had been denied. Although we have discretion to address this issue, we decline to do so. The issue is not "purely one of law," and the record with respect to the net operating loss has not been fully developed. See Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985).
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We dismiss the appeal as to Shizuko Yamamoto, because she failed to sign the notice of appeal and Hirotoshi Yamamoto appeared pro se. See Carter v. Commissioner, 784 F.2d 1006, 1008 (9th Cir.1986)
 
 
 [2]
 Although Yamamoto argued at trial that he qualified for the exception contained in 26 U.S.C. § 108(a)(1)(A), this argument is not considered on appeal because Yamamoto has not addressed it in his brief. See Wilcox v. Commissioner, 848 F.2d 1007, 1008 n. 2 (9th Cir.1988) (arguments not addressed in brief on appeal are deemed abandoned)
 Nor do we consider what seems to be Yamamoto's alternative argument that his $1.6 million debt to MFC was not discharged after all, because, he contends, the bankruptcy trustee obtained a $1.6 million judgment against him notwithstanding his assignment of the MEI note. See Appellant's Opening Brief, p. 2, item 7. Yamamoto offers nothing in his brief in support of this contention. He stipulated his $1.6 million debt to MFC was discharged by the assignment of the MEI note. Moreover, the tax court found the trustee's judgment was for liabilities other than Yamamoto's $1.6 million debt to MFC.