Susan J. MAYORS,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 85–7080.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 6, 1986.

Decided March 24, 1986.

Nicholas De Pento, San Diego, Cal., for petitioner-appellant.

Glenn Archer, Michael Paup, Richard Farber, Thomas R. Lamons, Washington, D.C., for respondent-appellee.

Before ANDERSON, PREGERSON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Appellant Susan J. Mayors ("Mayors") appeals the Tax Court's holding that she is liable under 26 U.S.C. § 6901(a) as a transferee of assets for the unpaid tax liability of Dr. Joseph A. Averna. We reverse.

## FACTS AND PROCEEDINGS BELOW

Mayors began working in the office of podiatrist Dr. Joseph A. Averna ("Averna") as a secretary and receptionist in 1971. Mayors and Averna became emotionally involved and began living together, but did not marry. In June, 1973, Mayors gave birth to their daughter, Antoinette. In anticipation of the birth, Averna bought a resident at 1970 Avon Lane, Spring Valley, California for $32,500. The deed conveyed the property to "Joseph Averna, a single man." Averna refinanced the property in 1977 for $52,000, giving a deed of trust for the property and signing a note making him personally liable for repayment. In December of 1978, Mayors and Averna separated and Mayors and Antoinette continued to live at the Avon Lane property up to the time of trial.

During their cohabitation, Mayors worked for Averna as a secretary, bookkeeper, and X-ray technician. Mayors also kept house for Averna, and Averna gave her funds for basic living expenses and for special needs as they arose. Averna did

not pay Mayors for her household services and paid her below-market wages for her work at his office. Averna and Mayors did not hold themselves out as married and kept their financial affairs separate.

At the time of their separation, Mayors and Averna discussed the division of their property. They reached an oral agreement through her attorney that Averna would transfer the Avon Lane property to Mayors and would provide $500 per month for child support. On February 20, 1979, Averna transferred the Avon Lane property to Mayors by quitclaim deed, with no cash consideration. At the time of the transfer, the property was worth $90,000 and was encumbered by the 1977 deed of trust with a remaining loan balance of $51,450, leaving a transfer of equity of $38,550 to Mayors. No arrangement was made with the bank to transfer liability for the loan, and Averna remained personally liable for the loan. At the time of the transfer, Averna was insolvent to the extent of $69,627.93.

Averna made the first four payments on the loan after the transfer in lieu of the child-support payments. Two months loan payments were missed, and then Mayors made the payments and penalties and brought the account current. Mayors made all subsequent payments and at some point put the promissory note in her own name. Averna made additional child support payments totalling $699 directly to Mayors, then stopped completely. Mayors then threatened to sue Averna for the discontinued child support payments.

Between 1979 and 1982, the Commissioner of Internal Revenue tried unsuccessfully to collect deficiencies, penalties, and interest from Averna for his 1977 and 1978 individual income taxes. On April 12, 1982, the Commissioner issued to Mayors a notice that she was liable as a transferee for payment of Averna's tax liability for 1977 and 1978. Mayors filed a petition in the Tax Court, commencing the current proceeding. The Tax Court found Mayors liable for Averna's liabilities, and Mayors timely appealed to this court. *See* Fed.R. Civ.P. 13; 26 U.S.C. § 7482(a) (1982).

## DISCUSSION

■ We review decisions of the United States Tax Court on the same basis as decisions in civil bench trials in United States District Courts. *Commissioner v. Duberstein,* 363 U.S. 278, 290–91, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960). Factual findings are reviewed under the "clearly erroneous" standard. *Id.;* Fed.R.Civ.P. 52(a). Mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewable *de novo. United States v. McConney,* 728 F.2d 1195, 1199–1204 (9th Cir.1984) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1985).

### I.

■ 26 U.S.C. § 6901(a) provides a procedure for the collection of an existing tax liability of the transferor of an asset from the transferee.[1] This provision is intended to prevent taxpayers from avoiding payment of taxes through transfer of assets that the Internal Revenue Service could otherwise attach to satisfy tax deficiencies. State law governs the actual liability of a transferee under this section. *Commissioner v. Stearn,* 357 U.S. 39, 42–45, 78 S.Ct. 1047, 1049–51, 2 L.Ed.2d 1126 (1958). Both parties agree that California law applies in this case. *See John Ownbey Co. v. Commissioner,* 645 F.2d 540, 543 (6th Cir. 1981).

---

**1.** 26 U.S.C. § 6901(a) provides in relevant part:
    (a) **Method of Collection.** The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

    (1) **Income, Estate, and Gift Taxes.**
    (A) **Transferees.** The liability, at law or in equity, of a transferee of property—
    (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes)
    . . . .

Liability under California law is governed by Cal.Civ.Code Ann. § 3439.04 (West 1970):

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to other creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

A conveyance fraudulent as to creditors may be set aside. *E.g., Headen v. Miller,* 141 Cal.App.3d 169, 172, 190 Cal.Rptr. 198, 200 (1983).

The Commissioner has the burden of proving liability of a transferee, 26 U.S.C. § 6902(a) (1982), in this case by making out a prima facie case of fraudulent conveyance. Under California law, a prima facie case of fraudulent conveyance is made out by a showing that the transfer was made by one who was insolvent.[2] The transferee then bears the burden of proving that the transfer was for fair consideration.[3] *Kirkland v. Risso,* 98 Cal.App.3d 971, 977–78, 159 Cal.Rptr. 798, 801–02 (1980).

There is no dispute that the transfer of the Avon Lane property constitutes a conveyance or that the Commissioner is a creditor of Averna under the California statute.

## II.

Mayors claims that the Tax Court erred in finding that the transfer of the Avon Lane property was without fair consideration. She notes that the Tax Court acknowledged:

> [U]nder California law, one party to a nonmarital relationship may recover from the other party to the relationship for the reasonable value of services rendered less the reasonable value of support received, if it can be shown that the services were rendered with an expectation of monetary reward. *Marvin v. Marvin,* [18 Cal.3d 660, 684, 134 Cal. Rptr. 815, 831–32, 557 P.2d 106, 122–23 (1976)]. Moreover, the California courts have now done away with the notion that services rendered by one nonmarital partner to another are presumptively contributed as gifts, in favor of a presumption that nonmarital parties intend to deal fairly with each other. [*Marvin,* 18 Cal.3d at 683, 134 Cal.Rptr. at 831, 557 P.2d at 122]. Accordingly, we would be willing to assume that any uncompensated services rendered by petitioner to Dr. Averna were rendered with the expectation of compensation.

Mayors argues that the transfer of the house was in settlement of this preexisting debt, and so constitutes fair consideration. *United States Fidelity & Guaranty Co. v. Postel,* 64 Cal.App.2d 567, 571, 149 P.2d 183, 185 (1944).

The Tax Court based its decision on Mayors's failure to prove the value of the services rendered:

> Without any evidence on this record which would allow us to estimate the value of services petitioner rendered to Dr. Averna with any reasonable degree of accuracy, or from which we could determine the extent to which the services remained uncompensated at the termination of the relationship, we would not be justified in ascribing any value to Dr. Averna's alleged obligation to reimburse petitioner for the reasonable value of her

---

2. "Insolvency" under California law is defined in Cal.Civ.Code Ann. § 3439.02(a) (West 1970) (California Uniform Fraudulent Conveyance Act):

> A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

3. "Fair consideration" under California law is defined in Cal.Civ.Code Ann. § 3439.03 (West 1970):

Fair consideration is given for property, or obligation:

(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith property is conveyed or an antecedent debt is satisfied, or

(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

uncompensated services. [citations omitted] We must therefore conclude that petitioner has failed to establish that she possessed any enforceable rights in Dr. Averna's property upon the termination of their relationship. Accordingly, petitioner's relinquishment of these alleged rights could not constitute fair consideration within the intendment of Cal.Civ. Code § 3439.03.

Since petitioner has not demonstrated on this record that Dr. Averna was obligated to her under the principles relating to nonmarital partners as ennunciated in *Marvin v. Marvin, supra,* she has failed to sustain her burden of proving that any obligation whatsoever was discharged by virtue of the transfer, and we must accordingly hold that the transfer was not supported by fair consideration. Accordingly, we hold that petitioner is liable as a transferee of Dr. Averna.

The Tax Court's decision misconstrues the nature of Mayors's claim of fair consideration. The court focuses on proof of the actual value and viability of a *Marvin*-type claim Mayors may have had against Averna. Whether Mayors actually had an enforceable right against Averna, however, is irrelevant to the fairness of the consideration if Mayors and Averna *believed in good faith* that she had such a right and the transfer was made to satisfy it or in exchange for her forbearance from enforcing it. It is well established in contract law that forbearance to exercise a legal right is sufficient consideration, *e.g., Coldwell, Banker & Co. v. Pepper Tree Office Center Associates,* 106 Cal.App.3d 272, 280, 165 Cal.Rptr. 51, 56 (1980), as is compromise of a claim, even if doubtful or disputed, *e.g., Healy v. Brewster,* 251 Cal. App.2d 541, 551, 59 Cal.Rptr. 752, 758 (1967); *Silver v. Shemanski,* 89 Cal.App.2d 520, 531, 201 P.2d 418, 426 (1949); 1 B.

Witkin, *Summary of California Law* § 157 (8th ed. 1973 & 1984 Supp.). A recent California fraudulent conveyance case, also involving "fair consideration" under Cal.Civ.Code § 3439.03, noted:

> [T]he essential issue before the jury was whether the entire transaction was enacted in good faith. If the parties in good faith believed that the promise was binding, then the consideration was good. [citing B. Witkin, *supra,* as analogy].... The mere possibility that the promise may not have been legally enforceable was irrelevant to the essential issue of good faith.

*Bank of California v. Virtue & Scheck, Inc.,* 140 Cal.App.3d 1026, 1040, 190 Cal. Rptr. 54, 64 (1983).[4]

■ The lack of an overt threat to sue Averna or of the filing of a suit against him does not undermine the good faith of the transfer. That Mayors was able to arrive at a division of property with Averna without resort to threats or litigation is commendable and should not be held against her. The Commissioner's claim that Mayors never intended to give up her rights under *Marvin* is unsupported by the record. Mayors testified that she considered suing Averna only after he stopped making the agreed child-support payments. This merely shows that Mayors considered taking action to enforce the original agreement, not that Mayors did not intend the original transfer to be binding. In fact, the tax court specifically found that Averna and Mayors understood that the transfer was in exchange for past services rendered by Mayors.

We therefore hold that the Tax Court misapplied the law to the facts in concluding that Averna transferred the Avon Lane property to Mayors without fair consideration.[5] The decision of the Tax Court is

---

4. The Commissioner correctly notes that the fraudulent conveyance provision itself is objective and does not require intent to defraud. Cal.Civ.Code Ann. § 3439.04 (West 1970); *Headen v. Miller,* 141 Cal.App.3d 169, 172, 190 Cal. Rptr. 198, 200 (1983). Nevertheless, as indicated by *Virtue & Scheck,* good faith *is* an essential element in determining fair consideration.

5. Because we reverse on this ground, we do not consider Mayors's argument that the Tax Court erred in finding that Averna was insolvent at the time of the transfer of the Avon Lane property to Mayors.

REVERSED and REMANDED with directions to enter judgment for Mayors.