**In re Theodore Steven ROOSEVELT, Debtor.**

**Judy A. ROOSEVELT, Appellant,**

v.

**David L. RAY, as Chapter 7 Trustee, and Office of the U.S. Trustee, Appellees.**

**Ronald W. SIGURDSON, Trustee of the Judy A. Roosevelt Trust, Appellant,**

v.

**David L. RAY, as Chapter 7 Trustee, and Office of the U.S. Trustee, Appellees.**

Bankruptcy No. LA90–28723–WL.
Adv. No. AD92–02142–WL.
BAP Nos. CC–93–2217–VHB,
CC–93–2218–VHB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 21, 1994.

Decided Dec. 30, 1994.

Heber S. Meeks, Glendora, CA, for appellant.

Russell H. Rapoport, Encino, CA, for appellees.

Before VOLINN, HAGAN and BRANDT,[1] Bankruptcy Judges.

### OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

The debtor and his spouse executed a marital settlement agreement which transferred to the spouse as her separate property a beneficial interest in a partnership held for her in trust and separate ownership of the family residence. In return, the debtor received as separate property his spouse's community interest in his medical practice and in his legal education. The court found that while the division of property may have been fair and equitable as between the parties, the debtor had actual intent to hinder, delay or defraud his creditors. The court concluded that the transfers were avoidable. The court also found that the debtor's spouse did not share the debtor's culpable intent, but was a

good faith transferee in the transaction. However, the court held that from the standpoint of creditors, the debtor's spouse gave zero value in exchange for the property she received. The court therefore rejected the spouse's defense to avoidance based on the value she transferred to the debtor. The court reached this conclusion by reasoning that the consideration received or retained by the debtor in the marriage settlement agreement had no value to his creditors, and therefore entered judgment for the trustee. For the reasons discussed below, we reverse and remand.

### FACTS AND PROCEEDINGS BELOW

The debtor, T. Steven Roosevelt (Steven) and his wife Judy Ann Roosevelt (Judy) were treating with a marriage counselor who subsequently testified that he recommended the couple execute a post-nuptial property settlement as an aid to improving their relationship. During this period, Steven was also a defendant and counter-complainant in a state court lawsuit against Finalco, Inc. (Judy was originally named as a defendant in the Finalco litigation as well, but was subsequently dismissed.)

On June 10, 1989, Steven and Judy executed a marriage settlement agreement. The agreement transmuted their various community and separate interests and liabilities into the separate property and liabilities of each. Among these transmutations, Judy received Steven's joint interest in the family residence, whose unencumbered value was $233,000, and his separate interest of a partnership share in the Glendora Medical Investment Company (the GMIC share), which the couple valued at $50,000. Pursuant to the GMIC partnership agreement, this latter interest was transferred to a trust set up for Judy's benefit. The trust was executed on June 20, 1989, with Steven acting initially as trustee as well as settlor. Ronald Sigurdson, a family friend, succeeded Steven as trustee. As discussed below, state court litigation with GMIC is pending as to whether the couple

---

1. Hon. Philip H. Brandt, Bankruptcy Judge for the Western District of Washington, sitting by designation.

effectively transferred Steven's ownership of the GMIC share to Judy.

In return for the house and trust, Judy ceded to Steven her community interest in his medical practice (a professional corporation), with an unencumbered value of $269,-000, and her community interest in Steven's legal education, valued by the couple at $50,-000. Steven took sole responsibility for the Finalco litigation. Judy took responsibility for litigation arising out of her interest in a business venture of her own. According to appellants, the net result of the agreement left Steven with property worth some $319,-000 (and an unknown liability to Finalco) and Judy with property worth $255,000.

The marital agreement was executed but not recorded. After execution of the marital agreement, Steven co-signed with Judy two deeds of trust on the residence on December 21, 1989. Steven and Judy executed a declaration of homestead on March 13, 1990 and recorded it on March 16. On March 16, the state court issued a ruling adverse to Steven in the Finalco litigation. Due to Steven's involvement in the Finalco litigation, Judy asked Steven to give her a quitclaim deed to the residence. On April 12, 1990, Steven recorded the requested quitclaim deed for the residence on Judy's behalf.

Steven filed bankruptcy on November 9, 1990. Based on the transfers, Finalco brought an adversary proceeding objecting to Steven's discharge pursuant to 11 U.S.C. § 727(a).[2] The court found that Steven transferred the property with an actual intent to hinder, delay and defraud creditors. The court found that for purposes of § 727, however, the transfers took place upon execution of the settlement agreement, more than one year prior to filing the petition, and therefore granted Steven his discharge.[3]

In August 1991, Judy sold the house and moved to northern California. We have been advised that the marriage was dissolved in 1991, and the dissolution court incorporated the marital agreement into the dissolution decree.

During the course of these transactions, Steven had attempted without success to get GMIC to liquidate his partnership share. In December, 1990, Sigurdson sued GMIC on Judy's behalf in state court for dissolution of the GMIC partnership. Although Steven testified that he had informed GMIC of the transfer in trust of his interest, GMIC claimed that it had never received notice of the trust and started an intervenor action in the bankruptcy court. Sigurdson moved to remand to state court. At a hearing in the bankruptcy court on September 11, 1991, the chapter 7 trustee stated that he was not prepared to take a position in the matter. After warning the parties that the trustee might subsequently raise the issue of fraudulent conveyance, the court remanded the proceedings, where the issues were submitted to arbitration.

In April of 1992, the Chapter 7 trustee commenced an adversary proceeding against Steven, Judy, and Sigurdson to avoid the transfers of the residence and GMIC share to Judy as fraudulent conveyances under § 548 and § 544(b). Steven was dismissed as a defendant by stipulation with the Chapter 7 trustee on March 24, 1993.

The bankruptcy court consolidated the claims and tried them on April 19, June 8, and July 9, 1993. Concurrently, Sigurdson prevailed in the GMIC arbitration. However, the state court stayed its decision whether to adopt the arbitrator's decision regarding the question of transfer.

At the close of trial, the bankruptcy court announced its ruling on the record so that a separate document of findings and conclusions would not be required. Nevertheless, counsel for the plaintiffs prepared separate findings and conclusions which were entered by the court.

In its written findings and conclusions, the bankruptcy court expressly declined to rule whether the settlement agreement effectively transferred the GMIC share. Determining that creditors could avoid the transfer of the

---

2. Unless otherwise stated, all references to "sections" or "rules" refer to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and the Federal Rules of Bankruptcy Procedure 1001–9036.

3. This order is the subject of a separate appeal by Finalco, CC–93–2221–VHB.

GMIC share under state law had it been transferred, the court concluded that it belonged to the estate in either event, and settled the property interest in the estate. Sigurdson appeals from this portion of the order in BAP appeal No. CC–93–2218.

The court found that for purposes of § 548, the time of transfer of the residence was the date of perfection of the interest, that is, the recording of the quitclaim deed, which occurred less than one year prior to the bankruptcy.

The court also found that Judy was a good faith transferee, entitled under § 548(c) to defend against the avoidance to the extent that she had given value to the debtor in exchange for the transfer. The court found the value of Judy's share of Steven's medical practice and legal education to be zero. As Judy had sold the house, the court credited her for capital gains tax incurred, repair expenses, and costs of sale, and entered a money judgment against her pursuant to § 550. BAP appeal No. CC–93–2217 followed.

During the pendency of this appeal, the chapter 7 trustee reached a settlement with GMIC. Appellant's motion for stay pending appeal was denied, and the settlement was approved, bringing $100,000 into the estate. $50,000 of this amount has been paid over to trustee's counsel as his fee. The trustee has moved to dismiss Sigurdson's appeal of the GMIC order, CC–93–2218, on the basis of mootness.

## ISSUES PRESENTED

Judy and Sigurdson contend that the court erred by finding that the value of the property Judy gave to Steven in the exchange—her interest in his medical practice and legal education—was zero. Although value is a finding of fact, the court made this finding by concluding as a matter of law that, while the value exchange may have been equivalent from the spouses' perspective, valuation must be determined from the perspective of creditors. Since creditors could not avail themselves of what the husband received, no value had been furnished. Appellants raise various other issues, but we find this issue to be dispositive.

## STANDARD OF REVIEW

"Mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewable *de novo.*" *Mayors v. C.I.R.,* 785 F.2d 757, 759 (9th Cir.1986).

## DISCUSSION

■ As a preliminary matter, we must determine whether the trustee's settlement has mooted Sigurdson's appeal. The trustee has moved to dismiss Sigurdson's appeal as moot in light of the settlement with GMIC. Since the trustee and his counsel were aware of this appeal when they effected the settlement, and because the estate and trustee's counsel are subject to order of the court by way of determining disposition of the funds, we determine that this issue is not moot. *In re Spirtos,* 992 F.2d 1004 (9th Cir.1993); *In re International Environmental Dynamics, Inc.,* 718 F.2d 322, 326 (9th Cir.1983).

■ As noted, the trial court found that Steven executed the marital agreement with an actual fraudulent intent, and this finding is not contested. The trial court determined that pursuant to § 548(d), transfer of the residence would be deemed to have occurred on the date of recording the quitclaim deed, April 12, 1990, which is within the one-year window provided by § 548(a). The court determined that the GMIC share was transferred, if at all, on June 20, 1989, the date of formation of the trust. The court found this transfer to be covered by § 544(b), which allows the trustee to invoke state law avoidance rights.

Pursuant to § 548(a):

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the

date that such transfer was made or such obligation was incurred, indebted. . . .

11 U.S.C. § 548.[4]

■ California's fraudulent conveyance statute, the Uniform Fraudulent Transfer Act, Cal.Civ.Code § 3439 et seq., operates similarly to § 548; however, the limitation period for avoidance is the later of four years after the transfer or one year after the date of reasonable discovery. Cal.Civ.Code § 3439.09(a) (West Supp.1995).[5] Both statutes allow a good faith transferee a defense to avoidance of the transfer based on value.[6]

At trial, the only evidence of valuation of Steven's medical practice was testimony by CPA, Michael S. Mitchell, who stated his opinion that the practice had a fair market value, including good will, of $325,000. This value was based on the assumption that sale of the practice would be accompanied by a noncompetition covenant; Mitchell testified that without such a covenant, the value of the practice would be zero, since without a covenant, the seller of a professional practice could establish another practice next door. This testimony and Steven's valuation of his legal education at $50,000 passed unchallenged and was largely accepted by the court.[7]

The court nevertheless was concerned that, although the exchange was fair between the parties, if not avoided, it would significantly impact the creditors. The court stated this dilemma in colloquy:

THE COURT: So you're saying—you're saying then that if somebody has a good medical practice and has a million dollars in assets, but his medical practice—maybe according to Mr. Mitchell—would be worth a million dollars, then he can keep his medical practice, give his wife everything else. And his million and a half dollars worth of creditors have to just whistle because this has been a fair settlement.

But I think the settlement is fair. I think it works out pretty fair that way. If he's got a million-dollar practice, she keeps everything. Maybe she keeps the Rolls Royce and the home and so forth.

But what about the creditors? Do we not—do we disregard the creditors completely in this case? Do we say, "Creditors, we don't care whether you can get anything out of this. This transfer is fair as between the parties, and therefore we are going to treat it as fair with respect to creditors."

Now, we have a case, I know, [*In re Riso*, 74 B.R. 750 (Bankr.D.N.H.1987)] that says that. You know, it says, "Well, it was a fair settlement agreement." I haven't checked into the entire settlement agreement to see just exactly what else was transferred.

But I am very much concerned with the idea that, hey, let the creditors just not be satisfied at all, because this very successful doctor, who has run up—and I'm not talk-

---

4. Section 548(a)(2) deals with avoidance based upon innocently motivated "constructive" fraud, where an insolvent or undercapitalized debtor "receives less than a reasonably equivalent value in exchange" for the property transferred to the transferee.

5. Sigurdson suggests that the applicable statute for Steven's transfer of the GMIC share is Cal. Civ.Code § 3440, "Conveyance of Personal Property Without Delivery," which has a limitation period of one year. The assertion appears to be incorrect; the GMIC share was actually delivered by creation of the trust and transfer of the share into it.

6. Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).

A transfer or an obligation is not voidable under subdivision (a) of Section 3439.04, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

Cal.Civ.Code § 3439.08(a) (West Supp.1995).

7. Although the written findings do not make an express statement that the court accepted the values as stated, from colloquy (quoted *infra*) it is apparent that the court accepted in theory that the settlement agreement was fair between the parties as a basis for its legal analysis of the fraudulent conveyance issue.

ing about this case. I'm talking about my hypothetical—he's run up a million and a half dollars in obligations and has a practice that's worth a million and has assets worth a million—is now going to be able to transfer to his wife a million dollars from a settlement agreement. And the creditors get absolutely zero. There's got to be something wrong with that from a fraudulent conveyance standpoint.

. . . .

[Was it] a matter of value that the husband received, or is it a matter of value with respect to creditors?

And I think in this case, I think you're just creating a terrible situation, as far as creditors are concerned, where you have professional people with practices who have run up tremendous bills and can then send everything over to the wife and say to the creditors, "Hey, you can't collect a thing. Because nobody can sell this practice unless I sign a covenant not to compete. And I'm not going to do that."

That's the problem I see here. And I think it's a real problem. And I think from the standpoint of fraudulent conveyances, when you're looking to the rights of creditors, I think you've got to consider that.

*Transcript of Proceedings*, April 19, 1993 at 364:15–367:5.

The trustee submits two arguments in support of the court's conclusion: 1) as noted by the court, without a noncompetition covenant, the sale value of Steven's medical practice would be zero; and, 2) on a more basic level, because Steven's medical practice[8] and legal education cannot be attached, from the standpoint of creditors, the value of this property again is zero. Neither premise appears correct.

The "standpoint of creditors" rule arises out of analysis of "reasonably equivalent value" under the constructive fraud aspect of the Code and the Uniform Fraudulent Transfer Act and the standard of "fair consider-

ation" of their predecessors, the former Bankruptcy Act and the Uniform Fraudulent Conveyance Act.

Appellee contends that under California law, reasonably equivalent value is viewed "from the standpoint of creditors." *Hansen v. Cramer*, 39 Cal.2d 321, 245 P.2d 1059, 1061 (1952) (applying rule to "fair consideration" under predecessor statute). Although no cases discuss the issue, the "standpoint of creditors" rule presumably must be applied when measuring the defense by a good faith transferee "to the extent that such transferee or obligee gave value to the debtor" pursuant to § 548(c).

The Ninth Circuit has applied the standpoint of creditors rule. *In re Prejean*, 994 F.2d 706 (9th Cir.1993); *see also Mayors v. C.I.R.*, 785 F.2d 757 (9th Cir.1986). However, the circuit has also ruled that a bankruptcy trustee may set aside a property allocation in a divorce decree only to the extent that the spouse received more than the debtor. *Britt v. Damson*, 334 F.2d 896, 903 (9th Cir.1964), *cert. denied*, 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965).

While stating that valuation is to be weighed from the standpoint of creditors, *Prejean* held that a time-barred debt constituted reasonably equivalent value. 994 F.2d at 709. In *Mayors*, the court determined that the question whether the transferee had an enforceable right to payment was irrelevant to determination of whether fair consideration had been exchanged, so long as the parties "believed in good faith that [the transferee] had such a right and the transfer was made to satisfy it or in exchange for her forbearance from enforcing it." 785 F.2d at 761.

It is clear that, as between the parties, the good will of a business has value,[9] as does the cost of a professional education insofar as a settlement between spous-

---

8. Appellants assert vigorously that creditors can attach a medical practice and that the trustee was derelict in failing to do so. We assume for the purpose of analysis, however, that these assets would be of no value to third parties.

9. "The good will of a business is property and is transferable." Cal.Bus. & Prof.Code § 14102 (West 1987).

es must be fair and equitable.[10] To that end, the dissolution court assigns assets to the appropriate spouse and makes a correlative assignment of property of equal value to the other.[11] When viewed from the perspective of the debtor-creditor relationship, it is appropriate to perceive dissolving spouses as mutual creditor-debtors, because the law requires a fair and equitable settlement of their claims against the marital *res* and one another.

■ The Ninth Circuit, in *Britt v. Damson*, 334 F.2d 896, 903 (9th Cir.1964), under the predecessor fraudulent conveyance statute in the Bankruptcy Act, considered a case where the community owned a construction business operated by the husband. The court awarded the business of the bankrupt husband and all community obligations to the husband. The wife was awarded the non-business community property. The court ruled that a court-awarded property settlement is only avoidable to the extent that the value of the community property awarded to the non-operating spouse exceeds in value the property awarded to the operating spouse.[12]

■ In California, a noncompetition covenant executed in the sale of a business upon dissolution is the separate property of the operating spouse. However, the California Court of Appeal (4th Dist., Div. 3) has ruled that when dividing marital property between spouses where the operating spouse will *retain* the business, therefore rendering needless a noncompetition covenant, the trial court should not reduce the community value of the business by the value of a hypothetical covenant to the detriment of the non-operating spouse. *Marriage of Czapar*, 232 Cal. App.3d 1308, 1314, 285 Cal.Rptr. 479 (1991).

Apportionment of going-concern value between good will and the covenant will vary with the circumstances. In the Roosevelts' settlement agreement, no value was assigned to a covenant for the reason that Steven was the *buyer* not the seller. Had Steven traded value to a retiring partner in a medical practice, no value would be assigned to a covenant, but it is clear that a reasonably equivalent value could be reached, and the hypothetical retiring partner would have a complete defense to avoidance of the transfer. Since a hypothetical covenant would be irrelevant in the context of the division of property upon dissolution, it follows that it is inapplicable to determination of value at the time of such a transfer.

Despite the foregoing considerations, the issue remains whether the transfer is avoidable, because, as the court opined, from the "standpoint of creditors" the practice had zero value because creditors could not levy on it. The court apparently relied on *Hansen v. Cramer*, 39 Cal.2d 321, 245 P.2d 1059 (1952). This reliance appears misplaced. In *Hansen*, the debtor transferred property to satisfy the separate debt of her husband. The court held that the debtor had no liability for her husband's debt and avoided the transfer, stating, "The debtor might be satisfied to give his assets to a stranger or to exchange them for some worthless chattel. But the law will not permit him to do so if he thereby renders himself uncollectible to the detriment of his creditors." *Id.* 245 P.2d at 1061. In *Hansen*, the wife got nothing for the property she transferred. However, in the case before us, Steven received a medical practice and the value of his legal education free of any claim by his wife. The income he derived from these assets free of any claim by the wife were subject to levy by his creditors. It is only the advent of bankrupt-

10. "The community shall be reimbursed for community contributions to education or training of a party that substantially enhances the earning capacity of the party." Cal.Civ.Code § 4800.3(b)(1) (West 1983) (repealed 1992), current version at Cal.Fam.Code § 2641(b)(1) (West 1994).

11. "Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substan-

tially equal division of the property." Cal.Civ. Code § 4800(b)(1) (West 1983) (repealed 1992), current version at Cal.Fam.Code § 2601 (West 1994).

12. The predecessor statute examined the exchange for "fair consideration" rather than "reasonably equivalent value." Both terms are to be construed from the "standpoint of creditors." *In re Prejean*, 994 F.2d 706, 709 (9th Cir.1993).

cy and its concomitant discharge of the creditors' claims against the debtor that affects the value of these assets.

As indicated in *Prejean, Hansen* utilized "standpoint of creditors" to mean that the value exchanged should result in no diminishment of the estate. In *Hansen,* the debtor's transfer diminished the estate because no corresponding liability of the estate was extinguished. Between the Roosevelts, however, value remained constant, and Steven's estate, assuming *arguendo* that it was unavailable to creditors, did not diminish in value by virtue of the wife's good faith transfer to him.

An estate may contain property that cannot be reached by creditors, such as exempt property, and it is clear that in the Ninth Circuit a debtor may convert non-exempt property into exempt property even on the eve of bankruptcy. *In re Wudrick,* 451 F.2d 988, 989 (9th Cir.1971). The Code presumes that creditors know the law and bear the risk that debtors will position their property to their best advantage. *In re Compton,* 70 B.R. 60, 61 (Bankr.W.D.Penn.1987).

As noted, what Steven received was not a dry hole for creditors prior to the bankruptcy. By making the transfer, Judy enabled Steven to use his primary assets, his education and practice, to earn income in order to pay creditors who would have these earnings available to them. In this connection, we also note that the residence, the primary asset received by Judy, would have been subject to a substantial claim of exemption from the claims of creditors.

For the purposes of § 548, "value" simply means "property, or satisfaction or securing of a present or antecedent debt." § 548(d)(2)(A). "Value" in § 548(c) is unqualified, and it is unwarranted to impose on a good faith transferee the measure of the effect of the transfer on other creditors of the debtor. Had the drafters intended such an extraneous standard, they could have provided for it in specific terms by excepting property not subject to levy from the definition of value.

Valuing the transfer from the net result to the creditors may make sense where the transferee is culpable, although this interpretation is unnecessary under the statutory scheme because a culpable transferee has no defense to avoidance.

## CONCLUSION

There is no language in either the state statute or the Code to suggest that the court may disregard the value of property transferred to a debtor because it may not be susceptible to direct attachment and execution. In any event, the property, a medical practice, is of a kind which could provide substantial accounts receivable subject to levy. Therefore, the judgment is REVERSED.

■ Our ruling leaves unresolved the actual value of the property transferred to Steven by Judy. As a basis for its analysis, the court accepted hypothetically that equal value was exchanged between the parties but never made a formal determination of that issue. Our ruling also resurrects the controversy between Sigurdson and GMIC as to whether Steven validly transferred the GMIC share to Judy. On remand, the trial court shall allow determination of this issue to proceed.

We therefore REMAND for further proceedings to determine the value exchanged between the parties and the limit of the trustee's recovery from Judy, if any, pursuant to *Britt v. Damson,* 334 F.2d 896 (9th Cir.1964). The trustee's motion to dismiss appeal No. CC–93–2218 will be denied by separate order.

REVERSED and REMANDED.