In re Theodore Steven ROOSEVELT, Debtor.

Judy A. Roosevelt, as Trustee for the Judy Roosevelt Trust; Ronald W. Sigurdson, as Trustee for the Judy Roosevelt Trust, Appellants.

v.

David L. Ray, Appellee.

No. 98–55965.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 2000

Filed Aug. 10, 2000

Heber Meeks, Covina, California, for the defendant-appellant.

Russell Rapoport, Plotkin, Rapoport & Nahmias, P.C., Encino, California, for the plaintiff-appellee.

Before: REINHARDT and O'SCANNLAIN, Circuit Judges, and SCHWARZER,[1] Senior District Judge.

Opinion by Judge O'SCANNLAIN; Partial Concurrence and Partial Dissent

1. The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

by Judge REINHARDT; Partial Concurrence and Partial Dissent by Judge SCHWARZER.

O'SCANNLAIN, Circuit Judge:

In this bankruptcy case, we must decide whether a good faith transferee gave property of value in exchange for property conveyed to her by a debtor in an otherwise avoidable transfer.

## I

On July 10, 1989, Steven and Judy Roosevelt executed a marriage settlement agreement ("MSA") purporting to transmute various community and separate property interests into the separate property of each. Steven transferred to Judy his community interest in the family home ("Glendora real property") and his separate interest in a partnership share of the Glendora Medical Investment Company ("GMIC").[2] In exchange, Judy gave Steven her community interest in his medical practice and her community interest in his legal education.[3]

On November 9, 1990, Steven filed for bankruptcy. In April 1992, the bankruptcy trustee and appellee in this case, David Ray, brought this action against Steven and Judy Roosevelt as well as Ronald Sigurson seeking to avoid the transfers of the Glendora property and the GMIC share to Judy on the grounds that they were fraudulently conveyed (11 U.S.C. § 544; 548), that they were transfers for less than equivalent value (11 U.S.C. § 544; 548), or that they were preference transfers (11 U.S.C. § 547). In March 1993, Steven was dismissed as a defendant.[4]

After trial, the first bankruptcy court concluded that Steven had transferred the property to Judy with the intent to hinder and to defraud creditors. Thus the transfer was adjudged to be avoidable as a fraudulent conveyance. The court next found that Judy was a good faith transferee entitling her to the § 548(c) defense to the avoidance to the extent that she had given value to her husband in exchange for the transferred property. Last, the judge found as a matter of law that Judy had given no value in exchange for the property she received because her husband's medical practice and legal education were worthless to creditors who could not attach them.

Judy appealed the judge's conclusion that the property she gave up was valueless. The Bankruptcy Appellate Panel (BAP) reversed. *See Roosevelt v. Ray (In re Roosevelt)*, 176 B.R. 200 (9th Cir. BAP 1994). The BAP held that while the value of the property must be determined from the perspective of creditors, the transfer can only be avoided to the extent that Judy, the transferee, received more value than Steven, her debtor spouse. *See id.* at 206–07. Thus the court remanded to the bankruptcy court to determine the value of the property transferred: "We therefore REMAND for further proceedings to determine the value exchanged between the parties and the limit of the trustee's recovery from Judy, if any, pursuant to *Britt v. Damson*, 334 F.2d 896 (9th Cir.1964)." *Id.* at 208.[5]

---

**2.** This GMIC share was placed into a trust with Judy designated as the beneficiary and Steven, initially, as trustee. Ronald Sigurson, a family friend, then succeeded Steven as trustee and for that reason is named in the suit.

**3.** Although Steven Roosevelt was a medical doctor, he returned to school during the couple's marriage to obtain a law degree, which he used to consult on medical liability issues.

**4.** A second action arising out of this bankruptcy, but raising issues unrelated to this suit was resolved by this court earlier. *See Final-*

*co, Inc. v. Roosevelt (In re Roosevelt)*, 87 F.3d 311 (9th Cir.1996), *as amended* 98 F.3d 1169, *overruled on other grounds Murray v. Bammer (In re Bammer)*, 131 F.3d 788 (9th Cir.1997) (en banc).

**5.** The BAP interpreted *Britt*, as well as *Maddox v. Robertson (In re Prejean)*, 994 F.2d 706 (9th Cir.1993), and *Mayors v. Commissioner of Internal Revenue*, 785 F.2d 757 (9th Cir. 1986), to stand for the proposition that a trustee may only avoid a transfer to the extent that "the value of the community property awarded to the non-operating spouse exceeds

On remand, the bankruptcy court concluded, in relevant part, that Steven's medical practice had at all times been his separate property and that Judy's interest in Steven's legal education had at all times been zero. Thus the court concluded that Judy had provided no value in exchange for the property she received. The court then found with respect to the Glendora real property that even if Judy had provided value, she could not assert a defense under § 548(c) because the transfer was also avoidable as a preference under § 547.

Judy appealed to the U.S. District Court for the Central District of California, which affirmed the bankruptcy court's judgment. Judy then filed this timely appeal.

## II

■ Judy argues first that the bankruptcy court erred when it failed to enter a pretrial order. Rule 7016 of the Federal Rules of Bankruptcy Procedure states that Federal Rule of Civil Procedure 16 applies in adversary proceedings. Rule 16 in turn provides for pretrial orders. In bankruptcy cases, however, this rule is supplanted by Local Bankruptcy Rule 121. This rule states that "unless otherwise ordered" the parties shall file a joint pretrial order setting forth, inter alia, uncontested facts and the contested factual and legal issues. *See* Local Rule 121(2). In this case, the bankruptcy judge chose not to proceed with a pretrial order and instead to use a combination of the original pretrial order, the mandate of the Bankruptcy Appellate Panel, and the findings from the first trial. Judy argues that the failure to enter an order caused confusion and allowed the trial to touch on issues that were not properly before the court.

■ Judy, however, does not cite to any authority for the proposition that, by itself, the failure to enter a pretrial order is reversible error. The rule itself places discretion in the hands of the bankruptcy

court judge. *See* Local Rule 121 (requiring the parties to prepare an order "unless otherwise ordered by the court"). Thus, Judy's contention that the bankruptcy court committed reversible error when it chose not to enter a pre-trial order is without merit.

## III

■ Judy next contends that the bankruptcy court exceeded its jurisdiction when it considered issues that went beyond the scope of the BAP's mandate and that it failed to follow the law of the case. Ray does not dispute the legal principle that the appellate court's mandate as well as the law of the case bind the trial court on remand, but argues that the trial court simply did not fail to follow these here.

Judy argues that the mandate of the BAP required that the trial court inquire only into the value of the property she and Steven had exchanged, and not the nature of the property (community versus separate). She contends that the BAP had already found that Steven's GMIC partnership interest was his separate property and that the medical practice and legal education were community property, and that the trial court on remand was bound by this finding. The BAP, however, never made the alleged findings, nor, of course, could it.

Judy cites to the "Facts and Proceedings Below" section of the BAP's opinion to support her contention that the BAP had already determined the nature of the properties. The BAP wrote,

> The [marriage settlement agreement] transmuted their various community and separate interests and liabilities into the separate property and liabilities of each. Among these transmutations, Judy received Steven's joint interest in the family residence ... and his separate interest of a partnership share in the Glendora Medical Investment Company.... In return ... Judy ceded to

in value the property awarded to the operating spouse." *Roosevelt,* 176 B.R. at 207. We

do not decide today the correctness of the BAP's holding.

Steven her community interest in his medical practice ... and her community interest in Steven's legal education.... *Roosevelt*, 176 B.R. at 202–03. These are not factual findings of the BAP, but rather a recitation of the transfers as they were described in the MSA. That is, the BAP recited what it was the parties purported to do; whether they did this is what is at issue in the proceedings. Thus, the bankruptcy court did not violate the law of the case when it made a finding of fact that the nature of the property was not as described in the MSA.[6]

Nor did this finding exceed the scope of the mandate. In remanding the case, the BAP noted, "Our ruling leaves unresolved the actual value of the property transferred to Steven by Judy. As a basis for its analysis, the court accepted hypothetically that equal value was exchanged between the parties but never made a formal determination of that issue.... We therefore REMAND for further proceedings to determine the value exchanged between the parties...." *Id.* at 208. In determining the value of the properties exchanged and the effect this would have on the trustee's ability to recover, the trial court had first to determine whether the property Judy gave up was even hers at all. If she had no interest in it, then she gave no value in exchange for the property she received. The BAP expressly left open the possibility that the value of the property on remand would be determined to be zero. *See id.* (ordering the bankruptcy court "to determine ... the limit of the trustee's recovery from Judy, *if any* ...."") (emphasis added). Hence the trial court did not exceed the scope of the mandate when it determined the nature of the properties exchanged.

## IV

We turn next to the heart of Judy's appeal. Section 548(a) provides that "The

trustee may avoid any transfer of an interest of the debtor in property ... if the debtor ... made such transfer ... with actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a). The bankruptcy court in the first trial found that Steven had transferred his interest in the Glendora real property and GMIC with the requisite fraudulent intent and thus concluded that Ray, as the trustee, could avoid the transfer Steven made. Because Judy was a good faith transferee, however, this determination was not the end of the matter. She had a defense under § 548(c):

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c). Accordingly, Judy may only retain her interest in these properties to the extent that she herself gave something of value. *See id.* But Judy may not take advantage of this defense if the transfer is avoidable under sections 544, 545, or 547. *See id.* The bankruptcy court found that with respect to the transfer of the Glendora real property, Judy could not assert the § 548(c) defense because the transfer was otherwise avoidable under § 547. In addition, the bankruptcy court found that the property given by Judy had no value to her and thus she was not entitled to any defense under § 548(c).[7]

## A

■ Judy argues that the bankruptcy court erred when it ruled that the transfer

---

6. Nor, for the same reasons, did it violate any "findings" made by the Ninth Circuit in *Finalco*, 87 F.3d at 313.

7. This time, the bankruptcy court did not determine this value as a matter of law, but rather made a finding of fact from the evidence presented.

of the Glendora real property was avoidable under § 547 as a preference transfer because it allowed Ray to assert this theory on remand although he had not preserved it on appeal. At the first trial, Ray argued that the transfer was avoidable both pursuant to § 544 or § 548 and pursuant to § 547. The trial court never reached the § 547 issue because it found the transfers to be avoidable under § 548(a) as fraudulent conveyances and concluded as a matter of law that the value Judy gave up was zero for the purposes of her defense under § 548(c). Presumably because Ray succeeded in avoiding the transfer as a fraudulent conveyance, he never pursued the alternative § 547 theory on appeal. On remand, the bankruptcy court reconsidered the § 548(c) issue and, with respect to the Glendora real property, determined that the transfer was avoidable as a preference under § 547. Judy does not appeal the court's conclusion with regard to avoidability under § 547, but rather argues that the court should not have considered that section at all because Ray failed to preserve this argument by cross-appealing the original order in which the bankruptcy court never reached the issue.

Because of the interrelationship between § 547 and § 548, we conclude that the bankruptcy court did not err in considering § 547. The bankruptcy court did not consider § 547 as an alternative theory of avoidance, but rather as an inseparable part of its § 548 analysis. Both trial courts to consider this case found that the transfers were avoidable as fraudulent conveyances under § 548. By its terms, the statute required the bankruptcy court on remand, when it decided whether Judy, as a good faith transferee, had a valid defense to avoidance, to determine whether the transfer would be avoided under

§ 547. See 11 U.S.C. § 548(c) ("*Except to the extent that a transfer or obligation voidable under this section is avoidable under section . . . 547 . . .* a transferee . . . that takes for value and in good faith . . . may retain any interest transferred . . . .") (emphasis added). Thus it was not error for the court in deciding the § 548(c) issue properly before it to consider § 547.

The two cases Judy cites-*Bethea v. Levi Strauss & Co.*, 916 F.2d 453 (8th Cir.1990), and *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320 (D.C.Cir.1989)-do not apply here where, in order to discuss § 548 at all, the district court had to reach the issue of avoidability under § 547. As such, § 547 was not invoked as an alternative ground for avoiding the transfer.

Given that by the terms of the statute, the bankruptcy court had to assure itself that the transfer of the Glendora real property could not be avoided under § 547 before allowing Judy to set off any value she gave against Steven's fraudulently conveyed property, we conclude that the bankruptcy court did not exceed the scope of the mandate and did not allow Ray to raise abandoned claims when it considered § 547.

Since the conveyance of the Glendora real property is avoidable as a § 547 preference transfer, Judy cannot benefit from the § 548(c) defense. Thus she may not retain any interest in Steven's community property share in the real property regardless of the value she gave in exchange.

### B.

While the § 547 issue disposes of any set offs against the Glendora real property, Judy, as a good faith transferee under § 548(c), may still retain the value of Steven's separate interest in the partnership of the GMIC to the extent that she gave value to Steven in return.[8] The bankrupt-

---

**8.** We note that the transcript of the hearings and trial before the bankruptcy court reflect considerable disagreement over the validity of Steven's transfer of his GMIC share. The issue had been submitted to arbitration and the parties disagreed over the conclusive effect of the arbitrator's decision. The trial court never resolved this issue in its order. On remand, the bankruptcy court may well conclude that the transfer was invalid. If so, as we have affirmed the avoidance of the

cy court found, however, that Judy gave no value when she transferred her community interest in Steven's medical practice and legal education because she had no interest in these properties.

OPINION OF O'SCANNLAIN, Circuit Judge, ONLY: [9]

1

The bankruptcy court found that Judy had no interest in Steven's medical practice because his "practice, including its good will, was at all times the separate property of [Steven] as no credible evidence was presented from which it should be concluded that the community or defendants acquired any interest in that property prior to the June, 1989 Marital Agreement." The trial court appears to have premised its conclusion on the fact that the practice was organized in 1979, two years prior to their 1981 marriage.

Judy concedes that the practice was organized prior to their marriage, but argues that any accretion in the value of the practice due to Steven's efforts during their marriage is community property.[10] She is correct. That Steven established his practice before his marriage is not dispositive. In California, property owned prior to marriage is separate property. See Cal. Fam.Code § 770. Property acquired dur-

ing marriage is presumed to be community property. See Cal. Fam.Code § 760. Steven's medical practice was thus separate property when he married. But to the extent its value increased due to his efforts while married, the augmented value is, at least in part, community property. "Where community efforts increase the value of a separate property business, it becomes necessary to quantify the contributions of the separate capital and community effort to the increase." Dekker v. Dekker, 17 Cal.App.4th 842, 851, 21 Cal. Rptr.2d 642 (1993) (applying the apportionment formula to determine the separate and community property values of property acquired with separate property, but which gained in value during marriage due to the efforts of the community). "Acquisitions and gains which are directly or indirectly attributable to community expenditures of labor and resources are shared equally by the community." Id.

It is unclear whether the bankruptcy court based its conclusion that Judy had no interest in Steven's medical practice on the erroneous legal premise that property that is separate before marriage remains separate or whether it found that Judy had failed to satisfy her burden of showing the increase in the value of the medical practice attributable to Steven's effort during

---

transfer of the house, it would not need to decide the value of Steven's medical practice.

**9.** Part IV.B.1 of this opinion represents the views of Judge O'Scannlain only. All judges concur in Parts I, II, and IV.A of the opinion. In addition, Judge Schwarzer concurs in Parts III and IV.B.2. Although Judge Reinhardt joins Judge O'Scannlain in voting to vacate in Part IV.B.1 he does so for entirely different reasons. He dissents from Parts III and IV of the opinion. Part V summarizes these various holdings.

**10.** In addition, although she does not raise this point, the pretrial order prepared for the first bankruptcy trial, and used again on remand, contained the following recitation in its list of issues of law that remained to be litigated:

E. All parties agree that as between [Steven] and Judy Roosevelt in a domestic

dissolution context her community interest in [Steven's] medical practice, including T. Steven Roosevelt, MD, PhD, Inc., legal education and legal practice do have value for the division of community property purposes, but are valueless from the perspective of a levying creditor. The primary issue is whether the existence of that domestic relations value prevents the Trustee from avoiding transfers totally or partially.

First, this recitation does not appear among the "facts [that] are admitted and require no proof." It appears as a preface to the identification of the main legal issue in the first trial. In addition, Judy herself argues that the pretrial order prepared for the first trial was without effect. Therefore, I cannot give it the same import that Judge Reinhardt's partial dissent does. The bankruptcy court could not have ascertained the value of Judy's interest in the property without determining whether Judy had an interest in it at all.

their marriage. Because § 548(c) is an affirmative defense, Judy bears the burden of proving the value she gave. *See Hayes v. Palm Seedlings Partners–A,* 916 F.2d 528, 535 (9th Cir.1990) (holding that transferee had burden of showing its good faith under § 547). Judy's expert testified at trial that the value of the medical practice at the time the spouses entered into the M.S.A. was $325,000.[11] Even though Steven's testimony is discounted because the bankruptcy judge expressly found him not to be credible, the tax returns and expert testimony suggest that Steven continued his practice during his marriage. On the other hand, there appears to be no evidence regarding the value of the medical practice at the time of marriage. Without such evidence it would be impossible to determine the increase, if any, in the value of the practice during the marriage. Thus, Judy may have failed to introduce sufficient evidence to carry her burden to demonstrate the value she gave.

I simply cannot say what the bankruptcy court meant to do. If the bankruptcy court relied only on the fact that Steven established his practice before he married to conclude that the practice was all times Steven's separate property, the bankruptcy court erred. On the other hand, the court may have relied on the fact that Judy failed to meet her burden to establish the increase in the value of the medical practice due to Steven's marital efforts.

I would therefore vacate the district court's affirmance of the bankruptcy court's judgment regarding Judy's interest in Steven's medical practice. On remand, the bankruptcy court may either clarify its order regarding the sufficiency of Judy's evidence or it may apportion the increase in the value of Steven's medical practice in accordance with California law. *See Dekker,* 17 Cal.App.4th at 852–55, 21 Cal. Rptr.2d 642.[12]

## OPINION OF THE COURT:

### 2

■ The trial court ruled that Judy gave up no value when she transferred her interest in her husband's legal education because following *In re Marriage of Aufmuth,* 89 Cal.App.3d 446, 152 Cal.Rptr. 668 (1979), expenditures for professional training are not property. *Id.* at 460–62, 152 Cal.Rptr. 668 (holding that a law degree earned during marriage is not community property). Judy argues that *Aufmuth* has since been undermined by the California legislature and that educational expenses can be property for the purposes of § 548.

■ California Family Code § 2641 (passed since *Aufmuth*) establishes the community's right to reimbursement for educational expenses paid with community property that substantially enhance a spouse's earning capacity. *Id.* California law further provides that a right to reimbursement is property. *See* Cal. Civ.Code §§ 654; 655. For the purposes of 11 U.S.C. § 548, " 'value' means property." *See id.* at § 548(d)(2)(A). This is not the end of the inquiry, however. To qualify as property under California law, the educational expenses still had to be paid with community property *and* had to have substantially enhanced Steven's earning capacity. *See* Cal. Fam.Code § 2641. Again, Judy bears the burden of proving the value she gave. *See Hayes,* 916 F.2d at 535.

Judy points to no evidence in the record to demonstrate that the trial court clearly erred when it determined that the money to pay for the education did not come from community funds. Instead, Judy argues that the source of the money should be presumed to be the community because under California law property acquired during marriage is presumed to be community property. *See Veteran's Welfare*

---

**11.** The bankruptcy court did not adopt this valuation as a factual finding of its own.

**12.** There are two votes (Judge Reinhardt's and Judge O'Scannlain's) to remand the case

for further proceedings on this issue. If, on remand, the bankruptcy judge makes it clear that Judy failed to present sufficient evidence to demonstrate her interest in Steven's practice, Judge O'Scannlain would affirm.

*Board v. Liebhart,* 50 Cal.App.2d 179, 180, 122 P.2d 693 (1942); Cal. Fam. Code. § 760. But it does not follow from this presumption that the funds expended on education are presumed to be community funds. Although California Family Code § 2641 established the community's right to reimbursement for community funds expended for a degree, it did not alter *Aufmuth*'s basic holding that an educational degree earned during marriage is not community property. *See Worth v. Worth,* 195 Cal.App.3d 768, 775, 241 Cal.Rptr. 135 (1987) (explaining that, to the contrary, § 2641 validated the underlying rationale of *Aufmuth* that a degree is not an asset or property of the community). Judy lacks the support of any beneficial presumption therefore and points to no evidence in the record establishing that the funds were community funds. Accordingly, we cannot say that the bankruptcy court clearly erred when it found that there was no evidence that the funds expended for Steven's law degree were community funds.

As Judy has shown neither that the funds expended were community funds nor that Steven's earning capacity increased,[13] the community has no right to reimbursement, and therefore no property.[14] No property means no value. No value means no § 548(c) set off against the § 548(a) avoidance. Thus the bankruptcy court did not err when it ruled that the value of the community interest in Steven's education that Judy gave up in the M.S.A. was zero.[15]

---

**13.** Oddly, on appeal to this court, Judy does not even argue that the bankruptcy court erred when it determined that the legal education had not substantially enhanced Steven's earnings. The only evidence offered by Judy at trial on this issue was Steven's testimony that he could now charge more per hour, but the court expressly found it not credible. There was no other evidence in the record to support a conclusion that Steven's earnings had been affected. Although Judy appealed this determination to the district court, which rejected her arguments, she does not appeal the issue to this court. As such she has waived it.

**V**

Because the transfer of the Glendora real property from Steven to Judy was avoidable under § 547, Judy's § 548(c) defense does not apply and the trustee may avoid this transfer. We therefore affirm the judgment of the district court with respect to that issue. We also affirm the district court's affirmance of the bankruptcy court's conclusion that Judy had no interest in the funds expended for Steven's legal education. However, we vacate the district court's affirmance of the bankruptcy court's finding that Steven's medical practice was at all times his separate property because it was established prior to his marriage; we remand the case to the district court with instructions to remand the case to the bankruptcy court for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED IN PART; and REMANDED with instructions.

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's holding that the bankruptcy court did not err in finding that the conveyance of the Glendora real property was avoidable as a § 547 preference transfer. However, I cannot agree with the majority's conclusion that the new bankruptcy judge did not exceed the scope of the BAP's mandate when he determined anew the nature of the properties involved. The record makes clear that the nature of the properties in which Ms. Roosevelt

---

**14.** The community's right to reimbursement only extends as far as community funds were expended. As Judy bore the burden of proof and has not established that any such money paid for Steven's education, the recitation in the first pretrial order stating that the community had an interest in Steven's education does not affect our conclusion.

**15.** Judy has filed a motion to strike certain statements in Ray's brief as immaterial, impertinent or scandalous. Because deletion or retention of the material would in no way affect the outcome of this case, the motion is denied as moot.

transferred her interests had already been finally resolved, and that the jurisdiction of the bankruptcy court was limited by the BAP's mandate to determining the *value* of her community interest. The bankruptcy court and the BAP had previously held that Ms. Roosevelt possessed a community interest in her former husband's medical practice and legal education. Nevertheless, the new bankruptcy judge determined not the *value,* but the *nature* of her interest in the relevant property. Accordingly, in my opinion, we are required to reverse and remand with directions to the bankruptcy court that it carry out the previous mandate—that it determine the actual value of the property transferred by Ms. Roosevelt. Thus, I agree with the decision to vacate the judgment regarding the medical practice but would hold that on remand the bankruptcy court should determine the amount of Ms. Roosevelt's interest in the practice. I also dissent from the majority's affirmance of the part of the judgment holding that Ms. Roosevelt had no interest in the funds expended for Dr. Roosevelt's legal education and denying her, on that account, an offset for her share of such payments.

At the first trial, there was no dispute that Ms. Roosevelt had a community interest in both the medical practice and the legal education. The 1993 Joint Pretrial Order contains a stipulation by all parties that:

> All parties agree that as between Debtor and Judy Roosevelt in a domestic dissolution context her community interest in Debtor's medical practice, including T. Steven Roosevelt, MD, PHD, Inc., legal education and legal practice *do have value for a division of community property purposes,* but are valueless from the perspective of a levying creditor. The primary issue is whether the existence of that domestic relations value prevents the Trustee from avoiding the transfers totally or partially.

(emphasis added). The BAP then determined that the community interest, rather than the amount available to creditors for levying, was the proper basis for valuation

under § 548. *In re Roosevelt,* 176 B.R. 200, 208. The BAP noted that its ruling left unresolved "the actual value of the property transferred to Steven by Judy," *id.,* and remanded "to determine the value exchanged between the parties and the limit of the trustee's recovery from Judy, if any, pursuant to *Britt v. Damson." In re Roosevelt,* 176 B.R. 200, 208.

On remand, the new bankruptcy judge did not issue a pre-trial order, but adopted the 1993 Joint Pre–Trial Order along with the opinion issued by the BAP, and the findings from the first trial that were not reversed on appeal. Thus, he properly adopted the stipulation that Ms. Roosevelt's community interests in Dr. Roosevelt's medical practice and legal education "do have value" for community property purposes and he was bound by the BAP opinion that the community interest value was the proper basis for valuation purposes. It is clear from this, if nothing else, that the issue whether Ms. Roosevelt had a community interest in her former husband's medical practice and legal education had been resolved, and was not before the bankruptcy judge on remand. The only remaining issue with respect to the medical practice and legal education was the *value* of the community property involved. That was what the bankruptcy judge was supposed to determine—and that is what he erroneously declined to do.

It is readily apparent from the above that the new bankruptcy judge exceeded his jurisdiction by concluding that the medical practice was at all times the separate property of Mr. Roosevelt, and that, in the absence of evidence that the legal education was paid for with community funds, the legal education was also separate property. The newly assigned judge should, instead, have calculated the value of Ms. Roosevelt's community interest in both properties and made whatever offset may be appropriate on that basis.

SCHWARZER, Senior District Judge, concurring in part and dissenting in part:

I concur in all of Judge O'Scannlain's opinion except section IV.B.1 remanding for the trial judge to clarify his ruling regarding the value of Judy's interest in the medical practice.

The bankruptcy court held that Judy gave no value by relinquishing her interest in the medical practice. We may affirm on any ground supported by the record. *See Papike v. Tambrands, Inc.,* 107 F.3d 737, 744 (9th Cir.1997). Indeed, the trial court's decision "must be affirmed if correct, even if the court relied on the wrong grounds or reasons." *Claar v. Burlington Northern R. Co.,* 29 F.3d 499, 501 n. 1 (9th Cir.1994). Because I believe the bankruptcy court reached the correct result, I would affirm.

As Judge O'Scannlain's opinion recognizes, op. at 9805–06, because § 548(c) is an affirmative defense, Judy had the burden of proving the value she gave. *See Hayes v. Palm Seedlings Partners–A,* 916 F.2d 528, 535 (9th Cir.1990). It is not enough to state that under California law, when community efforts increase the value of a separate property business, the increase belongs to the community. *See Dekker v. Dekker,* 17 Cal.App.4th 842, 851, 21 Cal.Rptr.2d 642 (1993). To prove that she gave value, she must show that the medical practice actually increased in value during the marriage, and by how much.

On appeal, Judy rejects the contention that the burden is on her, arguing instead that the trustee has the burden of proving that the practice was Stephen's separate property. From Judy's posture in this case flowed her failure to present evidence of the value the community added to the practice. As Judge O'Scannlain's opinion notes, op. at 9806, the only evidence about the value of the practice was its value at the time the M.S.A. § was executed; no evidence appears in the record regarding the value of the practice at the beginning of the marriage, making it impossible to determine the increase in value, if any, during the marriage.

Because the practice was Stephen's separate property before the marriage, and Judy failed to introduce any credible evidence that the community acquired an interest in the practice, the bankruptcy court reached the correct result. I would affirm the court's determination that Judy gave no value by relinquishing her interest in the medical practice.